**SOUTHWEST GAS CORPORATION,**
Petitioner

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

**Public Service Commission of Nevada, et al., Intervenors.**

No. 93–1366.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 20, 1994.

Decided Dec. 2, 1994.

Douglas M. Canter, with whom Kathleen L. Mazure, was on the briefs, for petitioner. William I. Harkaway, entered an appearance for petitioner.

Timm L. Abendroth, Atty., F.E.R.C., with whom Jerome M. Feit, Sol., and Joseph S. Davies, Deputy Sol., F.E.R.C., were on the brief, for respondent.

Britton White, Jr., Dennis J. Dwyer, and Richard C. Green (for El Paso Natural Gas Co.) and Barbara S. Jost and Joel L. Greene (for Arizona Public Service Co., Phelps Dodge Corp., and Salt River Project Agr. Improvement and Power Dist.), were on the joint brief for intervenors. Neil E.M. Grad (for Public Service Comm'n of Nevada), C.R. Jennings (for Phelps Dodge Corp.), Ida M. Passamonti and Edward W. O'Neill (for Public Utilities Comm'n of the State of Cal.), David L. Huard (for Southern California Gas Co.), John P. Gregg (for El Paso Mun. Customer Group), Nicholas W. Fels and Jonathan T. Foot (for ASARCO, Inc., Cyprus Miami Min. Corp., and Magma Copper Co.), Kim M. Clark (for Meridian Oil Inc.), David W. Anderson and Patrick G. Golden (for Pacific Gas and Elec. Co.), Norman A. Pedersen and Edward B. Myers (for Southern California Utility Power Pool and Imperial Irr. Dist.), Margaret A. Moore (for Saguaro Power Co., a Ltd. Partnership), Irving J. Golub (for Gas Co. of New Mexico), and Mary Anne Mason (for El Paso Natural Gas Co.), entered appearances for intervenors.

Before SILBERMAN, BUCKLEY, and ROGERS, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Southwest Gas Corporation petitions for review of an order of the Federal Energy Regulatory Commission upholding the validity of contracts executed between El Paso Natural Gas Company and seven gas shippers. We agree with the Commission that Southwest has not been aggrieved within the meaning of section 19(b) of the Natural Gas Act and therefore lacks standing to obtain review of the Commission's order.

## I. BACKGROUND

Southwest Gas Corporation is a natural gas distributor that receives virtually all of its gas for its local distribution system from an interstate pipeline owned and operated by El Paso Natural Gas Company. The distribution systems of Southwest and other local distribution companies are connected to El Paso's San Juan mainline pipeline facility at five pipeline connection points, known as "delivery points," at the western terminus of El

Paso's pipeline near Topock, Arizona ("Topock delivery points").

Pursuant to a Commission order authorizing El Paso to offer separate sales and transportation services under a so-called "Global Settlement," *see El Paso Natural Gas Co.,* 54 F.E.R.C. ¶ 61,316 (1991), El Paso entered into a "full requirements" transportation service agreement with Southwest to deliver all of Southwest's gas requirements at two of the Topock delivery points. Subsequently, the Commission authorized El Paso to construct and operate a major expansion of its mainline pipeline facility. *See El Paso Natural Gas Co.,* 56 F.E.R.C. ¶ 61,198 at 61,774–75 (1991). Based on the expanded pipeline capacity, El Paso executed contracts in 1991 with seven new shippers ("expansion shippers") for delivery of gas at any of the five Topock delivery points, including the two delivery points utilized by Southwest. These contracts provided the expansion shippers with "firm service rights" (which the regulations define as rights that are not subject to a prior claim from another customer, *see* 18 C.F.R. § 284.8(a)(3) (1994)) up to the maximum volumes specified in their contracts. Nonetheless, an expansion shipper could only receive delivery at either of the two Topock delivery points utilized by Southwest with Southwest's prior agreement.

On August 17, 1992, Southwest filed a complaint with the Commission alleging that, by contracting with the expansion shippers for firm service rights at the Topock delivery points, El Paso had unlawfully overbooked capacity at these points, thereby undermining its pre-existing commitments to Southwest. On December 28, 1992, the Commission dismissed the complaint, finding that Southwest "ha[d] made no allegations that it ha[d] actually been harmed by the actions of El Paso...." *Southwest Gas Corp. v. El Paso Natural Gas Co.,* 61 F.E.R.C. ¶ 61,368 at 62,464 (1992).

On January 27, 1993, Southwest filed a petition for rehearing. The Commission denied Southwest's request, again finding no impairment of Southwest's contractual rights. *Southwest Gas Corp. v. El Paso Natural Gas Co.,* 63 F.E.R.C. ¶ 61,111 at 61,763–64 (1993). The Commission emphasized that Southwest "retain[ed] the ability to call on the entire capacity of [the two Topock delivery points]" and had failed to provide "any reason why Southwest would be forced to contract with the expansion shippers...." *Id.* at 61,763–64. Southwest filed a petition for review.

In a related matter, the Commission recently promulgated regulations ("Order 636") implementing a flexible delivery scheme that permits gas shippers such as Southwest to sell their rights to pipeline capacity to other shippers on the secondary market. *See* 18 C.F.R. § 284.243 (1994). El Paso subsequently submitted a proposal to the Commission in which it sought to implement Order 636's capacity release program. *See El Paso Natural Gas Co.,* 61 F.E.R.C. ¶ 61,333 at 62,283–84 (1992) ("restructuring proceedings"). According to Southwest, the orders arising out of those proceedings, in effect, permit the expansion shippers to sell their rights to capacity at the Topock delivery points to other shippers on the secondary market. Southwest has filed petitions for review of those orders in *Southwest Gas Corp. v. FERC,* No. 94–1310 (filed Apr. 11, 1994), and *Southwest Gas Corp. v. FERC,* No. 93–1627 (filed Sept. 17, 1993).

## II. DISCUSSION

Section 19(b) of the Natural Gas Act provides that any party "aggrieved by an order issued by the Commission in [a rehearing] proceeding may obtain a review of such order...." 15 U.S.C. § 717r(b) (1988). We have held that

> a party is aggrieved within the meaning of section 19(b) of the Natural Gas Act if as the result of an order of FERC it has sustained injury in fact to an interest arguably within the zone of interests to be protected or regulated by FERC under the Act.

*Moreau v. FERC,* 982 F.2d 556, 564 (D.C.Cir.1993) (internal brackets and quotation marks omitted). As there is no question that Southwest's interests are within the zone of interests the Natural Gas Act was intended to protect, the issue before us is whether Southwest has suffered an injury in fact. The Supreme Court recently defined

"injury in fact," for Article III purposes, as "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife,* —— U.S. ——, ——, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (internal citations and quotation marks omitted). For Southwest to establish statutory aggrievement, it must, at a minimum, show that it has suffered an Article III "injury in fact." *See id.* at —— — ——, 112 S.Ct. at 2145–46.

■ With some variations, Southwest alleges that by executing the expansion contracts for delivery at any of the five Topock delivery points, El Paso unlawfully overbooked capacity at the two Topock delivery points utilized by Southwest and thereby reduced the reliability of services provided to Southwest under its full requirements agreement. Southwest also maintains that El Paso demonstrated "undue preference" by granting the expansion shippers the flexibility to receive delivery at any of the five Topock delivery points while restricting Southwest to receive delivery at only two. *See* 15 U.S.C. § 717c(b) (1988) ("[n]o natural-gas company shall ... make or grant any undue preference ... or maintain any unreasonable difference in ... service, facilities, or in any other respect...."). Moreover, according to Southwest, these contracts violate El Paso's tariff requiring maximum daily quantities for each specific delivery point. Finally, Southwest avers that by permitting such flexibility, the Commission has violated its policy against flexible delivery points.

The Commission maintains that Southwest was not aggrieved within the meaning of section 19(b) of the Natural Gas Act because Southwest retained its right to the entire capacity of its connection to the two Topock delivery points unless it agreed to allow access to an expansion shipper. The Commission also contends that Southwest's arguments regarding delivery point flexibility relate to matters more properly addressed in El Paso's restructuring proceedings.

We note initially that Southwest has proffered no evidence that the expansion contracts have disrupted the actual flow of Southwest's gas at the two Topock delivery points. The question, then, is whether these contracts will sufficiently reduce the reliability of services provided to Southwest so as to constitute a cognizable injury under *Lujan.* We find no evidence to that effect. El Paso is prohibited from transporting the expansion shippers' gas through the two Topock delivery points utilized by Southwest unless the expansion shippers contract with Southwest for access to those delivery points. Because Southwest has complete control over whether to permit the expansion shippers to receive delivery at the two Topock delivery points, Southwest's gas requirements can be fully met by simply restricting access to the delivery points. The gatekeeper cannot complain of crowded conditions inside the gate.

Southwest does describe a contingency in which the expansion shippers and Southwest would make simultaneous demands in excess of the capacity of the system with the consequence that each would receive a pro rata reduction in the allocation of gas. Southwest also argues that El Paso's restructuring under Order 636 exacerbates these concerns by permitting the expansion shippers to sell their rights to capacity to other shippers.

In its preliminary order authorizing the expansion of El Paso's mainline pipeline facility, the Commission recognized the potential for capacity allocation conflicts between El Paso's historical customers and the expansion shippers. *See El Paso Natural Gas Co.,* 55 F.E.R.C. ¶ 61,180 at 61,590–91 (1991). Moreover, in response to Southwest's original complaint, El Paso acknowledged that in certain unexpected circumstances, a pro rata allocation of delivery point capacity might become necessary. Thus, El Paso and the Commission apparently recognize that in certain circumstances El Paso's pro rata allocation scheme could result in the reduction of service to El Paso's full requirements customers, including Southwest.

In discussing its approval for the expansion of El Paso's facilities, however, the Commission stated that "it would be open to a reexamination of that decision if on the basis of actual operating experience the needs of El Paso's full requirements customers were jeopardized." *Southwest Gas Corp. v. El Paso Natural Gas Co.,* 61 F.E.R.C. ¶ 61,368

at 62,464 (1992). Thus, should El Paso's pro rata allocation scheme actually threaten Southwest's rights, Southwest can challenge the scheme at that time. At this juncture, however, Southwest has failed to establish how such a theoretical injury is sufficiently imminent to demonstrate an "injury in fact" under *Lujan*. *See Lujan*, —— U.S. at ——, 112 S.Ct. at 2136. To the extent that Southwest's concern relates to the interaction of Order 636 with the contracts at issue here, it is incumbent upon Southwest to raise the issue in its petition for review of the Commission's orders in those proceedings.

Similarly, Southwest's arguments of undue preference fail to establish aggrievement. Because Southwest retains the right to refuse downstream transportation rights to the expansion shippers, it cannot, as a result of the other shippers' flexibility, incur any reduction in service without its prior consent. Regarding Southwest's argument that the expansion contracts breached El Paso's tariff requirement and thereby afforded the expansion shippers greater flexibility, we agree with the Commission that "El Paso's tariff does not require the listing of maximum delivery point rights at each individually identified delivery point." *Southwest Gas Corp. v. El Paso Natural Gas Co.*, 63 F.E.R.C. ¶ 61,-111 at 61,764 (1993).

As for any violation of the Commission's policy against flexible delivery points, the Commission ruled that concern for "historical primary delivery points and flexible/alternate delivery points . . . seems more properly to be one of the allocation of delivery point capacity which must, therefore, be addressed . . . in El Paso's restructuring proceedings. . . ." *Southwest Gas Corp. v. El Paso Natural Gas Co.*, 61 F.E.R.C. ¶ 61,368 at 62,464 (1992). We agree. Southwest has already raised its concerns relating to flexibility in the allocation of delivery point capacity in those proceedings, *see, e.g., El Paso Natural Gas Co.*, 64 F.E.R.C. ¶ 61,265 at 62,811 n. 3, 62,826–27 (1993); and that is where they should be pursued. Southwest is not aggrieved by the Commission's deferral of the issue. *See Tenneco, Inc. v. FERC*, 688 F.2d 1018, 1022 (5th Cir.1982) (no aggrievement where Commission transferred case

from adjudicatory setting to off-the-record investigation).

■ Finally, Southwest contends that the expansion contracts have created a "Hobson's choice" forcing it to decide between reduced service reliability and lost revenues. According to Southwest, the expansion contracts enable it to earn additional income by selling expansion shippers the right to utilize unused capacity at the two Topock delivery points. On the other hand, providing such access would reduce Southwest's flexibility to meet its own unexpected gas demands. Thus, Southwest concludes that it is aggrieved because it is forced to choose between either forgoing extra profits or reducing its own service reliability.

Even assuming the expansion contracts "injured" Southwest by forcing it to choose between a new opportunity for revenues and the security of its existing contract protection—a predicament many would gladly endure—Southwest is precluded from raising this issue on appeal. The Natural Gas Act provides that "[n]o objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do." 15 U.S.C. § 717r(b). In the underlying proceedings, Southwest was exclusively concerned with the reduced reliability of service as a full requirements customer and the undue preference afforded the expansion shippers. As the Commission correctly points out, Southwest never asserted, in either its initial complaint or its petition for rehearing, that it was aggrieved by having to choose between maximizing revenues and reduced service reliability. Nor in these proceedings has it provided a reason for its failure to raise this issue earlier. As a result, it is precluded from raising it now. *See Great Lakes Gas Transmission Ltd. Partnership v. FERC*, 984 F.2d 426, 432 n. 10 (D.C.Cir.1993).

## III. CONCLUSION

For the foregoing reasons, we hold that Southwest lacks standing to obtain review of

the Commission's order. Accordingly, Southwest's petition for review is

*Denied.*