143 F.3d 610
 330 U.S.App.D.C. 96, Util. L. Rep. P 14,205
 PUBLIC UTILITIES COMMISSION OF THE STATE OF CALIFORNIA, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Mojave Pipeline Company, et al., Intervenors.
 Nos. 97-1028, 97-1058, 97-1059, 97-1060, 97-1061, 97-1062,
97-1078, and 97-1082.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued April 2, 1998.
Decided May 22, 1998.
 
 [330 U.S.App.D.C. 97] On Petitions for Review of Orders of the Federal Energy Regulatory Commission.
 Mark Fogelman, San Francisco, CA, argued the cause and filed the briefs for petitioner Public Utilities Commission of the State of California.
 Katherine B. Edwards argued the cause for Interstate petitioners, with whom Frederick T. Kolb, New Orleans, LA, Philip D. Gettig, Fort Worth, TX, and Norman A. Pedersen, Los Angeles, CA, were on the joint briefs. Jason F. Leif, Wasington, DC, entered an appearance.
 Frederick Moring, Clifton S. Elgarten, Jessica R. Herrera, Wasington, DC, David J. Gilmore, Los Angeles, CA, A. Karen Hill, Washington, DC, Charles D. Gray, James Bradford Ramsey, Mike Florio, Nicholas W. Fels, Washington, DC, James F. Walsh, III, and Christopher J. Barr, Washington, DC, were on the joint briefs for petitioners Southern California Gas Co., et al.
 Samuel Soopper, Attorney, Federal Energy Regulatory Commission, Mount Rainier, MD, argued the cause for respondent, with whom Jay L. Witkin, Solicitor, and Susan J. Court, Special Counsel, Washington, DC, were on the brief.
 Katherine B. Edwards, Frederick T. Kolb, New Orleans, LA, Philip D. Gettig, Fort Worth, TX, Norman A. Pedersen Los Angeles, CA, and Jason F. Leif, Washington, DC, were on the joint brief for intervenors Amoco Energy Trading Corporation, et al.
 Mark Fogelman, San Francisco, CA, David J. Gilmore, Los Angeles, CA, Frederick Moring, Clifton S. Elgarten, Jessica R. Herrera, A. Karen Hill, Washington, DC, Charles D. Gray, Sacramento, CA, James Bradford Ramsey, Mike Florio, Nicholas W. Fels, Washington, DC, James F. Walsh, III, and Christopher J. Barr Washington, DC, were on the joint brief for intervenors Public Utilities Commission of the State of California, et al. Roberta L. Halladay, Washington, DC, entered an appearance.
 Before: EDWARDS, Chief Judge, GINSBURG and TATEL, Circuit Judges.
 Opinion for the Court filed by Chief Judge EDWARDS.
 [330 U.S.App.D.C. 98] HARRY T. EDWARDS, Chief Judge:
 
 
 1
 The Federal Energy Regulatory Commission ("FERC") found that the Public Utilities Commission of California ("CPUC") impermissibly infringed on federal jurisdiction when it authorized Southern California Gas Co. ("SoCal"), an intrastate pipeline, to charge interstate shippers for access to local service. In reaching this conclusion, FERC properly stated the boundaries of federal and state regulatory jurisdiction under the Hinshaw Amendment to the Natural Gas Act, 15 U.S.C. § 717(c) (1994), and reasonably applied the applicable law to the facts at hand. Yet, having found the access charge illegal, FERC inexplicably declined to order the intrastate pipeline to refund to the interstate shippers the $800,000 collected in illegal access fees. Instead, citing alleged comity interests, FERC proposed to wait and see if the CPUC would order the refund. This delay was arbitrary and capricious. FERC, not CPUC, clearly had jurisdiction over the interstate shippers, and the concept of "comity" did not apply. Because FERC had jurisdiction to declare the access charge illegal, it could and should have ordered the intrastate pipeline to refund the charge.
 
 I. BACKGROUND
 
 2
 On February 17, 1993, CPUC authorized SoCal to construct facilities that would connect its intrastate pipeline to the interstate Kern/Mojave pipeline at Wheeler Ridge, California. See Re Southern California Gas Co., D.93-02-055, 48 C.P.U.C.2d 251, 1993 WL 763500 (1993), reprinted in Joint Appendix ("J.A.") 138; see also Union Pac. Fuels, Inc. v. Southern California Gas Co., 76 F.E.R.C. p 61,300, at 62,491 (Sept. 19, 1996). On May 7, 1993, CPUC made a similar authorization for SoCal to connect with the intrastate Pacific Gas and Electric Company ("PG&E") pipeline at Kern River, California. See Re Southern California Gas Co., D.93-05-009, 49 C.P.U.C.2d 182, 1993 WL 642681 (1993), reprinted in J.A. 160; see also 76 F.E.R.C. p 61,300, at 62,491. Also on May 7, 1993, CPUC approved a tariff under which SoCal would charge rates for interconnection applicable to
 
 
 3
 natural gas transportation deliveries nominated by shippers into [SoCal's] intrastate system at the Wheeler Ridge and Kern River Station points of receipt ("interconnects") with the interstate systems of [Kern/Mojave] and the Pacific Gas and Electric Company Expansion project.
 
 
 4
 76 F.E.R.C. p 61,300, at 62,492. The interstate shippers affected by the tariff[1] challenged it in petitions before FERC and petitions for rehearing before CPUC. FERC did not act on the petitions, but on January 19, 1994, CPUC annulled the tariff and ordered SoCal to refund the interconnection charges it had collected from interstate shippers between July 13, 1993, and December 31, 1993. See id.
 
 
 5
 Had the CPUC refund order remained in place, this case would never have reached this court. But on further rehearing, after an evidentiary hearing before a California Administrative Law Judge ("ALJ"), CPUC concluded that a refund was inappropriate because the interstate shippers had received service and use of the interconnection facilities from SoCal. See id. CPUC based its revised decision on the process used to direct shipment of the gas. The interstate shippers informed SoCal of gas deliveries to be made to the Wheeler Ridge interchange, and of the intended end users of such deliveries. Once received at Wheeler Ridge, the gas was transported to local end users under contracts between SoCal and the end users. SoCal then billed the interstate shippers based on the volumes delivered to SoCal and billed the local end users based on actual transportation. For their part, the interstate shippers charged a bundled price to the end users.
 
 
 6
 According to CPUC, no refund was appropriate because the interstate shippers nominated deliveries into the interconnection facility. CPUC reasoned:[330 U.S.App.D.C. 99] It is obvious to us that these nominators are customers of SoCalGas; service was provided to the interstate shipper. In California they nominate in writing to SoCalGas for SoCalGas to transport gas to be delivered by the nominator to SoCalGas at Wheeler Ridge; the destination of the gas is the facility of the end user; the shippers agree to pay SoCalGas' access charge; SoCalGas accepts the nomination; they deliver the gas to SoCalGas in California at Wheeler Ridge; SoCalGas accepts the gas in accordance with the terms of the nomination and transports it to the end user in California; SoCalGas bills the nominator for the access charge; the nominator pays the access charge. On these facts, we cannot reach any conclusion other than that the nominators are customers of SoCalGas.
 
 
 7
 Re Southern California Utility Power Pool, D.95-07-12, 60 C.P.U.C.2d 462, 468, 1995 WL 464104 (1995), reprinted in J.A. 417. In CPUC's view, the key point was that the interconnection charge applied to deliveries "nominated" by shippers. Nomination, CPUC claimed, sufficed to make the shippers into intrastate customers of SoCal and hence subject to the jurisdiction of CPUC.
 
 
 8
 After CPUC decided not to order a refund, the interstate shippers asked FERC to reconsider their petitions; FERC did so. Over CPUC's objections, FERC held that CPUC never had authority to make the tariff applicable to interstate shippers. FERC acknowledged that, under the Hinshaw Amendment to the Natural Gas Act, 15 U.S.C. § 717(c), SoCal was an intrastate shipper generally exempt from FERC jurisdiction. See 76 F.E.R.C. p 61,300, at 62,494. However, FERC explained, where FERC has jurisdiction, its jurisdiction is exclusive. The interconnection charge at issue fell within FERC's jurisdiction because it was "a charge to interstate shippers for the act of moving gas over the [interstate] Kern/Mojave pipeline and delivering it to SoCal rather than a charge for any service performed by SoCal after its receipt of the gas." Id. at 62,495.
 
 
 9
 FERC explained that mere nomination by the interstate shippers did not make the shippers into intrastate actors. In FERC's view, the Hinshaw Amendment "clearly and positively" drew the line between intrastate and interstate service by restricting the exception to "gas received ... within or at the boundary of a State." 15 U.S.C. § 717(c). To FERC, this meant that demarcation occurs "at the point when the intrastate company receives the gas from an interstate shipper." 76 F.E.R.C. p 61,300, at 62,495. Because SoCal performed no service for the interstate shippers after the point of receipt of the gas, FERC reasoned, the Hinshaw Amendment did not apply, and CPUC had no authority to allow SoCal to charge the tariff.
 
 
 10
 In its first order, FERC declined to order a refund. It held that because SoCal was an intrastate pipeline subject to the Hinshaw Amendment, FERC lacked authority to require SoCal to make a refund. See id. at 62,496. FERC Commissioner (now Chairman) James Hoecker dissented on the issue of the remedy, pointing out that in the past FERC had ordered intrastate pipelines to pay refunds and had been upheld by the courts. See id. at 62,498. Because FERC's finding satisfied neither CPUC and SoCal (whose actions had been held illegal) nor the interstate shippers (who received no remedy), all parties sought rehearing.
 
 
 11
 On rehearing, FERC reaffirmed its conclusion as to the merits, finding the tariff illegal. See Union Pac. Fuels, Inc. v. Southern California Gas Co., 77 F.E.R.C. p 61,283 (Dec. 19, 1996). On the remedy issue, FERC withdrew its earlier statement that it lacked jurisdiction to order the refund, and instead was silent as to jurisdiction. "[R]egardless of the extent of [its] legal authority," FERC now asserted, it thought it best to let state regulatory agencies like CPUC correct their own errors. See id. at 62,250. Citing "considerations of comity," FERC decided to give CPUC an opportunity to remedy its error by ordering a refund. See id. at 62,249. The interstate shippers then returned to CPUC to ask for a remedy; the California ALJ in charge of the case announced his intention to defer a decision on a remedy until after this court's ruling. All parties now petition for review.[330 U.S.App.D.C. 100] II. ANALYSIS
 
 A. Merits
 1. Reasonableness of FERC's Determination
 
 12
 FERC found that the tariff which CPUC authorized SoCal to charge to interstate shippers was not a permissible charge for intrastate services rendered, but, rather, an access charge for the privilege of introducing gas into SoCal's intrastate system. FERC therefore concluded that the charge illegally infringed on FERC's jurisdiction over interstate shipment of gas, because the access charge was essentially a charge for carrying gas interstate to the Wheeler Ridge interchange. SoCal and CPUC argue that this determination by FERC was arbitrary and capricious or otherwise not in accordance with law. See 5 U.S.C. § 706(2)(A) (1994). Reviewing in accordance with this standard, we hold that FERC's determination that the tariff was an access charge was reasonable, not arbitrary, and that FERC's conclusion that the tariff was illegal was a proper interpretation of 15 U.S.C. § 717(c).
 
 
 13
 FERC explained clearly why it rejected CPUC's theory that the interstate shippers were customers of SoCal: SoCal did not render any identifiable service to the interstate shippers. See 76 F.E.R.C. p 61,300, at 62,495. The contracts for actual transportation of gas from Wheeler Ridge to the California end users were between the end users and SoCal. As FERC put it on rehearing, the interstate shippers' "only connection to SoCal [was] that they nominated deliveries to Wheeler Ridge." 77 F.E.R.C. p 61,283, at 62,246. None of the interstate shippers contracted with SoCal for gas delivery. Indeed, although this point is not necessary for our holding, we note that the interstate shippers may not even have had the option under CPUC's regulations of contracting directly with SoCal for transportation of their gas to the end users, at least not without obtaining special permission from CPUC. See Independent Energy Producers Ass'n v. Southern California Edison Co., D.91-11-023, 41 C.P.U.C.2d 668, 683, 1991 WL 426377 (1991), reprinted in J.A. 573-75 ("Only end-use customers will be able to subscribe to intrastate delivery from the utility.")
 
 
 14
 Furthermore, the "nomination" on which CPUC's determination focused was nothing more than a formal announcement to SoCal of the destination of the gas. The interstate shippers would never have made this nomination unless it had been required by the tariff. The interstate shippers agreed to the nominations and the tariff only under duress, after SoCal warned them it would block their access if they did not pay the fee. Their supposed "consent," therefore, cannot serve as evidence that they were paying for a service. It is true that in its order on rehearing, FERC acknowledged that intrastate shippers also had to pay the access charge, and that such a charge was a matter for CPUC and outside FERC's jurisdiction. See 77 F.E.R.C. p 61,283, at 62,246. This acknowledgment, however, has no bearing on whether the tariff was indeed an access charge to interstate shippers, because it was clearly within CPUC's jurisdiction to authorize an access charge to intrastate shippers for intrastate transport.
 
 
 15
 In sum, Petitioners never point to any service that they can convincingly claim the interstate shippers were buying from SoCal. FERC acted reasonably, therefore, when it concluded that the tariff was an access charge that interstate shippers were compelled to pay in order to deliver their gas to the SoCal pipeline. This leads directly to the question of FERC's jurisdiction over the charge made to interstate shippers.
 
 2. FERC's Jurisdiction
 
 16
 In order to decide whether it had jurisdiction over the access charge leveled here, FERC had to interpret the Hinshaw Amendment to the Natural Gas Act, 15 U.S.C. § 717(c). The Hinshaw Amendment carves out an exception to FERC jurisdiction for natural and legal persons engaged in the transportation of "natural gas received by such person from another person within or at the boundary of a State if all the natural gas so received is ultimately consumed within such State." 15 U.S.C. § 717(c). As all parties acknowledge, SoCal is a so-called "Hinshaw pipeline," covered by § 717(c) and regulated [330 U.S.App.D.C. 101] primarily by the CPUC with regard to its intrastate activities. A Hinshaw pipeline can, however, come under FERC authority when it engages in activities that go beyond the intrastate transport of gas. SoCal, for example, holds a certificate from FERC permitting it to engage in certain non-exempt, interstate transport activities that fall within FERC's jurisdiction. See 18 C.F.R. § 284.224 (1997).
 
 
 17
 We defer to FERC's "interpretation of its authority to exercise jurisdiction" if it is reasonable. See Oklahoma Natural Gas Co. v. FERC, 28 F.3d 1281, 1283-84 (D.C.Cir.1994) (citing Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). FERC interpreted the Hinshaw Amendment as "drawing the line of demarcation between Federal and State regulation at the point when the intrastate company receives the gas from an interstate shipper." 76 F.E.R.C. p 61,300, at 62,495. This interpretation certainly accords with the plain meaning of the statutory words "received by such person from another person." See § 717(c). It is entirely reasonable for FERC to understand the Hinshaw Amendment to mean that when an intrastate pipeline receives gas from an interstate pipeline within or at the border of its state, jurisdiction switches from FERC to the state. Indeed, this appears to be the common-sense meaning of the statute.
 
 
 18
 Because FERC took the view that the tariff required the interstate shippers to pay an access charge, the charge related to something that occurred, by definition, prior to the transfer of the gas from the interstate shippers to SoCal, the intrastate party. It followed reasonably that the access charge belonged within FERC's jurisdiction. In functional terms, a charge to interstate shippers for access to intrastate service directly and significantly affects interstate shipment of gas by increasing its cost. The access charge thus fell squarely within FERC's regulatory bailiwick both in legal and policy terms.
 
 
 19
 SoCal and CPUC pose several challenges to FERC's interpretation of its jurisdiction. First, they argue that because the Hinshaw Amendment exempts from FERC jurisdiction, "persons" who engage in certain defined intrastate activities, rather than the activities themselves, see § 717(c), FERC cannot regulate a "person" who engages in intrastate activity. Because SoCal is a Hinshaw pipeline, the argument runs, § 717(c) "precludes the FERC from regulating SoCalGas' transportation of natural gas within California, as well as its rates, services, and facilities." See Brief for Petitioner CPUC at 11. This reading of § 717(c), which purports to rely on its legislative history, would place the tariff in question within the scope of CPUC's authority and outside that of FERC.
 
 
 20
 This conclusory argument, which might be generously construed as a Chevron step one argument about the statute's plain meaning, obviously misses the point of the Hinshaw Amendment. On its face, the Hinshaw Amendment only exempts from FERC jurisdiction persons "engaged in or legally authorized to engage in" intrastate gas transport. See § 717(c). This provision was certainly intended to exempt such persons from FERC regulation only for the purposes of their involvement in intrastate gas transport, not for the purposes of their involvement in interstate or other regulated activities. A Hinshaw pipeline can unquestionably come under FERC authority when it engages in activities that go beyond the intrastate transport of gas.
 
 
 21
 Section 717(c) cannot plausibly mean that any person who engages in intrastate activities is exempt from FERC jurisdiction in all activities; otherwise any interstate pipeline could free itself from all FERC regulation simply by engaging in some intrastate transport. Thus when the Supreme Court once in passing described the Hinshaw Amendment as a provision "to exempt persons receiving natural gas within a State and transmitting or selling it for consumption solely within the same state," see F.P.C. v. Southern California Edison Co., 376 U.S. 205, 216 n. 9, 84 S.Ct. 644, 651 n. 9, 11 L.Ed.2d 638 (1964), the Court was simply paraphrasing the language of § 717(c), and did not mean to confer blanket freedom from FERC jurisdiction on all persons who engage in intrastate gas transport.
 
 
 22
 [330 U.S.App.D.C. 102] Legislative history also provides no basis for the argument proposed by SoCal and CPUC. The one passage from a Senate report to which SoCal and CPUC refer merely states that the Hinshaw Amendment will provide "that a company shall not be subject to the Act by reason of the fact that it is engaged in the transportation, within a State, of out-of-State gas received within or at the state border." See S.REP. NO. 83-817, at 2 (1953). The fact that the Act is directed towards a company--the same as the "person" mentioned in the Act itself--does not mean that the Act excludes from FERC jurisdiction persons who engage in interstate activities as well as intrastate ones. There is thus no basis for CPUC's apparent contention that the text and history of § 717(c) somehow preclude FERC's interpretation of the Hinshaw Amendment.
 
 
 23
 CPUC and SoCal also urge that three passages from opinions of this court countermand FERC's interpretation of its jurisdiction here. In Altamont Gas Transmission Co. v. FERC, 92 F.3d 1239 (D.C.Cir.1996), we reviewed FERC orders that related to a CPUC tariff for the intrastate PG&G pipeline, which CPUC authorized at the same time that it authorized the SoCal tariff. There, we held that the FERC exceeded its jurisdiction by promulgating orders explicitly intended to affect CPUC's rate-setting for the intrastate pipeline, rate-setting which undisputedly fell within CPUC's sole jurisdiction. See id. at 1246-47. We explained that, under the Hinshaw Amendment, FERC had no authority "to do indirectly what it could not do directly," namely regulate the rates for intrastate pipelines. See id. at 1248. In the conclusion to that opinion, we used the following formulation:
 
 
 24
 Although the Commission generally has the authority to consider a matter beyond its jurisdiction if the matter affects jurisdictional sales--at least if there would otherwise be a regulatory gap--here there is no such gap but, on the contrary, an express congressional reservation of jurisdiction to another body.
 
 
 25
 Id. CPUC and SoCal rely on this language to suggest that here, too, FERC sought to infringe on matters beyond its jurisdiction.
 
 
 26
 Our opinion in Altamont Gas does not control this case. Unlike the FERC action in Altamont Gas, FERC's orders here do not seek to affect CPUC's tariff-setting for a matter that is undisputedly within CPUC's jurisdiction. Instead, the dispute here focuses precisely on the question of which agency in fact had jurisdiction over a tariff charged for access to interchange facilities. FERC did not seek to do indirectly what it could not do directly: rather it simply acted directly in an area in which it found that it had the right to act. In other words, there can be no doubt over the fact that the access charge in question did "affect[ ] jurisdictional sales." See id. This was so, FERC found, because the tariff required interstate shippers to pay an access fee that was unrelated to any actual provision of service. In short, our conclusion in Altamont Gas provides no help to SoCal and CPUC.
 
 
 27
 SoCal and CPUC next argue that, under Southwest Gas Corp. v. FERC, 40 F.3d 464 (D.C.Cir.1994), FERC cannot "compel" SoCal to accept gas from interstate shippers "free of charge." They maintain that by disallowing the access charge, FERC is requiring SoCal to accept gas "for free." In Southwest Gas, we rejected a petitioner's challenge to FERC action on standing grounds. In that case, we observed that under its contracts with an interstate shipper, a particular intrastate pipeline had "complete control" over whether to permit other intrastate shippers to take delivery from the interstate shipper at certain delivery points. See id. at 467. Because the intrastate pipeline controlled access to the delivery points under its contracts, we concluded, it could not claim that it would suffer an injury if the other intrastate pipelines took delivery at those points. See id.
 
 
 28
 Obviously, our holding in Southwest Gas is inapposite to the case at bar. Our opinion in Southwest Gas says nothing whatever about any party, private or public, compelling a local pipeline to do anything at all. Our observation that the intrastate pipeline had "complete control" over access was neither more nor less than a descriptive statement about the effect of the contracts at issue there. See id. We neither announced nor [330 U.S.App.D.C. 103] hinted at any general rule of law regarding access. The argument proposed by SoCal and CPUC wrenches one phase of our opinion from its context, and is entirely unavailing.
 
 
 29
 Finally, SoCal and CPUC advert to an amended footnote which they claim precludes FERC's jurisdiction here. See United Distrib. Co. v. FERC, 88 F.3d 1105, 1153 n. 62 (D.C.Cir.1996) (footnote amended by order, Oct. 29, 1996). In that footnote, we rejected a claim urged by intrastate pipelines "given that [the local pipelines] do not suggest that FERC has improperly exercised jurisdiction over the release of capacity held on non-jurisdictional Hinshaw pipelines." Id. The argument of SoCal and CPUC appears to be that if FERC may not require release of capacity on Hinshaw pipelines, it cannot require such pipelines to receive gas into their systems. But this argument rests on a false premise. The footnote by its terms clearly did not constitute a holding that FERC may not exercise jurisdiction over capacity on Hinshaw pipelines. Rather, the footnote merely noted the absence of an allegation of improper exercise of jurisdiction. In no way does this imply that a proper mode of exercising jurisdiction over capacity on Hinshaw pipelines could not exist. In sum, none of the cases cited by SoCal and CPUC precludes FERC's interpretation of its jurisdiction.
 
 B. Remedy
 
 30
 In its first order, FERC took the strange position that it lacked authority to order SoCal to refund the impermissibly collected tariff. See 76 F.E.R.C. p 61,300, at 62,496. On remand, FERC withdrew from this misguided position, but instead cited "comity" as a reason to await CPUC's determination of whether it would offer a refund. See 77 F.E.R.C. p 61,283, at 62,249-50. The interstate shippers challenge FERC's delay as arbitrary and capricious; they could as easily call it an abuse of discretion. See Koch Gateway Pipeline v. FERC, 136 F.3d 810, 816 n. 14 (D.C.Cir.1998) (explaining that in FERC refund context arbitrary and capricious standard and abuse of discretion standard converge).
 
 
 31
 The interstate shippers have been "aggrieved" under the meaning of section 19(b) of the Natural Gas Act, 15 U.S.C. § 717r(b) (1994). Aggrievement requires an injury in fact. See Southwest Gas, 40 F.3d at 466. Under our precedent, a party has suffered injury in fact where FERC has denied it a refund due to it. See Tennessee Gas Transmission Co. v. F.P.C., 322 F.2d 1006, 1008 (D.C.Cir.1963). And there can be no claim here that FERC's order is not "final," see Papago Tribal Util. Auth. v. FERC, 628 F.2d 235, 239-40 (D.C.Cir.1980), because the order here has the final effect of definitively delaying the refund which, by FERC's own lights, is due to the interstate shippers.
 
 
 32
 FERC possesses considerable discretion in fashioning remedies. See Laclede Gas Co. v. FERC, 997 F.2d 936, 944 (D.C.Cir.1993). Nonetheless, where FERC "fail[s] to establish that its decision represents a 'reasonable accommodation of the relevant factors' and that the [remedy] is 'equitable under the circumstances,' we must vacate FERC's action and remand for reconsideration." See Koch Gateway Pipeline, 136 F.3d at 816 (citing Laclede Gas Co., 997 F.2d at 944). Here, FERC failed to provide a logically coherent, reasonable explanation for delaying the refund; furthermore, the delay itself was clearly inequitable.
 
 
 33
 The doctrine of comity typically applies in circumstances of overlapping jurisdiction. In this case, however, there was no question of overlapping jurisdiction between FERC and CPUC. The tariff was illegal precisely because CPUC intruded into FERC's jurisdiction over the interstate transport of gas. There is also no question that FERC had jurisdiction to order SoCal to refund the tariff to the interstate shippers. We have in the past upheld FERC authority to direct refund orders at intrastate Hinshaw pipelines normally outside FERC's jurisdiction. See Panhandle E. Pipe Line Co. v. FERC, 95 F.3d 62, 73-74 (D.C.Cir.1996). It therefore makes no sense to argue, as FERC did in its order, that comity permits FERC to make the interstate shippers suffer delay until CPUC orders a refund. Similarly, the interstate shippers were not required to "exhaust" state remedies before seeking relief [330 U.S.App.D.C. 104] from FERC with respect to a matter solely within FERC's jurisdiction.
 
 
 34
 Finally, FERC's decision does not appear to accord with equity. The interstate shippers paid a tariff which FERC found to be illegal. SoCal therefore collected a windfall profit. It is not obvious how delaying the refund actually serves any interests of FERC: we find it difficult to imagine that having found the CPUC's tariff illegal, FERC really expects that CPUC will be mollified by FERC's supposed deference on the refund issue. But the delay certainly seems unfair to the interstate shippers, whose only interest is recovering the money they were illegally compelled to pay. We therefore remand the delay of remedy to FERC for proper resolution of this issue.
 
 III. CONCLUSION
 
 35
 FERC reasonably found that the tariff was an access charge for interstate petitioners, and properly found it illegal. However, FERC acted arbitrarily in deferring a remedy, and we remand to FERC on the remedy issue. The petition for review is therefore denied in part and granted in part.
 
 
 36
 So ordered.
 
 
 
 [1]
 The interstate shippers who appear as Petitioners before this court are: Amoco Energy Trading Corporation; Burlington Resources Oil & Gas Company; CanWest Gas Supply U.S.A., Inc.; Petro-Canada Hydrocarbons, Inc.; Southern California Utility Power Pool/Imperial Irrigation District; and Union Pacific Fuels, Inc