**SOUTHWEST GAS CORPORATION,**
Petitioner,

v.

**FEDERAL ENERGY REGULATORY
COMMISSION, Respondent.**

Southern California Gas Company,
·et al., Intervenors.

Nos. 92–1623, 93–1627, and 94–1310.·

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 23, 1998.

Decided June 2, 1998.

Douglas M. Canter argued the cause and filed the briefs for petitioner.

Patricia L. Weiss, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent, with whom John H. Conway, Deputy Solicitor, and Susan J. Court, Special Counsel, were on the brief. Edward S. Gelderman and Timm L. Abendroth, Attorneys, entered appearances.

Before: EDWARDS, Chief Judge, GINSBURG and SENTELLE, Circuit Judges.

SENTELLE, Circuit Judge:

In this consolidated proceeding, we consider petitions filed by Southwest Gas Corporation ("petitioner" or "Southwest"), a local distribution company ("LDC"), seeking review of six orders of the Federal Energy Regulatory Commission ("FERC" or "the Commission") applying the changes in the natural gas pipeline regulatory regime under Order No. 636 [1] to the pipeline operated by El Paso Natural Gas Company ("El Paso") which serves Southwest. Because we find that each challenge is either moot, previously disposed of, or without merit under applicable standards of review, we deny all petitions.

## I. BACKGROUND

### A. *The Regulatory Landscape*

For most of the last two decades, the Commission has been engaged in a major restructuring of the natural gas industry, designed to produce a less regulated, more market-oriented regime. *See generally United Distrib. Cos. v. FERC*, 88 F.3d 1105, 1121–30 (D.C.Cir.1996) ("*UDC*"), and authorities collected therein. In this undertaking, FERC determined that the prior practice of "bundling" sales and transportation service—in which a pipeline functioned both as a gas merchant and transporter, selling gas to local distribution companies connected with its system and delivering the gas to those customers—prevented buyers from reaching competitively priced wellhead gas as Congress had intended. *See* Order No. 636 at 30,393 (citing H.R.Rep. No. 29, 101st Cong., 1st Sess. 6 (1989), U.S. Code Cong. & Admin. News at 51, 55–56). The Commission therefore undertook a process of "unbundling" with a view to requiring all pipelines to separate transportation and sales services, culmi-

nating in Order No. 636. *See UDC*, 88 F.3d at 1123–27 (reciting history of mandatory unbundling); *Pennsylvania Office of Consumer Advocate v. FERC*, 131 F.3d 182, 184 (D.C.Cir.1997), *corrected and affirmed*, 134 F.3d 422 (D.C.Cir.1998). The present controversy involves Southwest's complaints concerning the application of two regulations promulgated under Order No. 636 to El Paso's pipeline serving Southwest.

The first regulation requires pipelines to devise a mechanism whereby firm shippers, such as Southwest, can release previously purchased but unneeded firm transportation capacity to third parties. 18 C.R.R. § 284.243 (1997). The Commission concluded that such a mechanism would promote the efficient use of pipeline capacity and enable more buyers to access more sellers of gas, at the same time facilitating nondiscriminatory open-access transportation and maximizing the benefits of a competitive wellhead market. *See* Order No. 636 at 30,418; *see also UDC*, 88 F.3d at 1149.

The second regulation at issue is a requirement that pipelines provide their firm shippers with flexibility to choose among the locations at which the pipeline will receive gas from or deliver it to them. 18 C.F.R. §§ 284.221(g) & (h) (1997). The Commission intended this flexibility to achieve the goals of the capacity release program we have just described. Order No. 636 at 30,428–29. Firm shippers taking advantage of this flexibility may use any delivery points which they have under contract on an interruptible basis without losing priority for firm service. Thus, a firm shipper may change delivery points in order to permit another entity to ship gas using the firm shipper's unneeded capacity without losing capacity rights. However, Order No. 636 does not permit unlimited flexibility in the choice of delivery points. A firm shipper may resell its capacity at no additional charge only for delivery within the firm transportation area to which

1. Order No. 636, Pipeline Service Obligations and Revisions to Regulations Governing Self-Implementing Transportation; and Regulation of Natural Gas Pipelines After Wellhead Decontrol, F.E.R.C. Stats. & Regs. (CCH) ¶ 30,939, *order on reh'g*, Order No. 636–A, F.E.R.C. Stats. & Regs. (CCH) ¶ 30,950, *order on reh'g*, Order No. 636–B,

61 F.E.R.C. (CCH) ¶ 61,272 (1992), *aff'd in part, rev'd in part, United Distrib. Cos. v. FERC*, 88 F.3d 1105 (D.C.Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1723, 137 L.Ed.2d 845 (1997), *order on remand*, Order No. 636–C, 78 F.E.R.C. ¶ 61,186 (1997).

it is entitled and for which it pays. *Id.* As relevant to the present controversy, this means that an LDC in a downstream portion of a region served by a pipeline can arrange delivery of gas to another LDC in an upstream portion (that is between the production field and the seller) but not in a downstream portion outside the contract delivery area. *Id.* In FERC parlance, the shipper may sell capacity at no additional charge only "within the path" of its firm service. Order No. 636–A at 30,582. A shipper's right to flexible use of delivery points is subject to the rights of firm shippers using those points as primary delivery points, but is superior to the rights of interruptible shippers at those same points. *Id.* at 30,583.

### B. *The Factual Background*

Southwest is an LDC that buys natural gas transported through an interstate pipeline owned and operated by El Paso. *See Southwest Gas Corp. v. FERC*, 40 F.3d 464, 465–66 (D.C.Cir.1994).[2] The distribution systems of Southwest and other LDCs are connected to El Paso's San Juan mainline pipeline facility at five pipeline connection points, known as "delivery points," at the western terminus of El Paso's pipeline near Topock, Arizona ("Topock delivery points").

As part of the Commission's transition to a market-based regime, and pursuant to a Commission order authorizing El Paso to offer separate sales and transportation services under a so-called "Global Settlement," *see El Paso Natural Gas Co.*, 54 F.E.R.C. ¶ 61,316 (1991), El Paso entered into a "full requirements" transportation service agreement with Southwest to deliver all of Southwest's gas requirements at two of the Topock delivery points. Subsequently, the Commission authorized El Paso to construct and operate a major expansion of its mainline pipeline facility. *See El Paso Natural Gas Co.*, 56 F.E.R.C. ¶ 61,198 at 61,774–75 (1991). Based on the expanded pipeline capacity, El Paso executed contracts in 1991 with seven new shippers ("Expansion Shippers") for delivery of gas at any of the five Topock delivery points, including the two delivery points utilized by Southwest. These contracts provided the Expansion Shippers with "firm service rights" (which the regulations define as rights that are not subject to a prior claim from another customer, *see* 18 C.F.R. § 284.8(a)(3) (1997)), up to the maximum volumes specified in their contracts. Nonetheless, an Expansion Shipper could only receive delivery at either of the two Topock delivery points utilized by Southwest with Southwest's prior agreement.

On August 17, 1992, Southwest filed a complaint with the Commission alleging that, by contracting with the Expansion Shippers for firm service rights at the Topock delivery points, El Paso had unlawfully overbooked capacity at these points, thereby undermining its pre-existing commitments to Southwest, a "full requirements" customer. On December 28, 1992, the Commission dismissed the complaint, finding that Southwest "made no allegations that it has actually been harmed by the actions of El Paso...." *Southwest Gas Corp. v. El Paso Natural Gas Co.*, 61 F.E.R.C. ¶ 61,368 at 62,464 (1992).

On January 27, 1993, Southwest filed a petition for rehearing. The Commission denied Southwest's request; again finding no impairment of Southwest's contractual rights. *Southwest Gas Corp. v. El Paso Natural Gas Co.*, 63 F.E.R.C. ¶ 61,111 at 61,763–64 (1993). The Commission emphasized that Southwest "retain[ed] the ability to call on the entire capacity of" the two Topock delivery points and failed to provide "any reason why Southwest would be forced to contract with the expansion shippers...." *Id.*

We subsequently denied Southwest's petition for review, holding that Southwest had failed to demonstrate an "injury in fact." *Southwest Gas Corp.*, 40 F.3d at 468 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). We concluded that Southwest had failed to show that the expansion contracts had disrupted the flow of gas at the two Topock delivery points, or that it was likely to do so in the future. *Id.*

---

2. Our exposition of the facts of this case is drawn, in large measure, from Judge Buckley's opinion in *Southwest Gas Corp.*

As required by Order No. 636, El Paso submitted a proposal to the Commission in which it sought to implement a capacity release program. *See El Paso Natural Gas Co.*, 61 F.E.R.C. ¶ 61,333 at 62,283–84 (1992). According to Southwest, the orders arising out of those proceedings in effect permit the Expansion Shippers to sell their rights to capacity at the Topock delivery points to other shippers on the secondary market. Southwest petitioned for review of those orders.

After FERC rejected one El Paso proposal to implement a capacity release mechanism, El Paso proposed to FERC that shippers use as primary delivery points any available delivery points within their delivery zone which do not include those downstream from their ultimate delivery point. El Paso next proposed that shippers use any receipt points located within the part of El Paso's system covered by the shipper's contract. *See El Paso Natural Gas Co.*, 62 F.E.R.C. ¶ 61,311 at 62,981 (1993). Finally, El Paso proposed to limit the capacity that a full requirements customer could release to its maximum "billing determinants," a measure of customer demand or entitlement to a pipeline's services.

As part of a group of El Paso's customers located east of California, Southwest objected to El Paso's flexible delivery point proposal, arguing—as it had during the 1992 complaint proceeding—that its right to capacity had priority over the rights of any Expansion Shippers at the Nevada Topock delivery point utilized by it. Southwest also quarreled with El Paso's receipt point proposal, arguing that it ought to be able to use receipt points outside its contracted-for zone at no extra charge. In particular, Southwest wanted to use the California Topock delivery points, "downstream" from its contract zone, without paying an additional charge, by means of "backhaul" or "displacement."

The Commission rejected Southwest's challenges and approved El Paso's proposal. In rejecting Southwest's claim for priority at the Nevada Topock delivery point, the Commission repeated a point it had made when ruling on Southwest's earlier complaint: any Expansion Shipper wanting to use that delivery point would be required to make arrangements with Southwest, the sole owner of the facilities at that point. *Id.* at 62,989. The Commission also rejected Southwest's request that it be able to use the California Topock delivery points at no extra charge. Noting that that delivery point was downstream from the rate zone covered by Southwest's reservation charges, the Commission determined that Southwest's request was foreclosed by the requirements of Order No. 636. The Commission added that Southwest was free to use the California Topock delivery points if it wished to pay the applicable zone reservation charge.

Southwest petitioned for rehearing. It argued that the Commission had deferred certain issues in the 1992 complaint proceeding to the restructuring proceeding. Southwest then complained that the Commission had failed to address these issues in the restructuring proceeding, despite what Southwest considers FERC's earlier promise to do so. The Commission rejected Southwest's arguments and denied its petition for rehearing. Notwithstanding Southwest's arguments to the contrary, FERC stated that the deferred issues (the impact of El Paso's flexible receipt and delivery point mechanism on shippers) had been resolved in an earlier order. It also found that requiring shippers to pay reservation charges for the zone in which the receipt point is located was consistent with Order No. 636, which is premised on requiring shippers to pay for the facilities and capacity on the portion of the system they use.

After El Paso submitted revised tariff sheets to comply with FERC's most recent order, a group of El Paso shippers taking gas deliveries in Arizona (the "Arizona Directs") petitioned for rehearing of that order. *See El Paso Natural Gas Co.*, 65 F.E.R.C. ¶ 61,-134 at 61,675–77 (1993). They asked the Commission to make it clear that a full requirements customer could not use capacity at its primary delivery points in excess of its billing determinants. If this were not the case, they explained, a full requirements customer could block the use of its delivery points by others by claiming that its total capacity could be applied to each of its pri-

mary delivery points. Southwest opposed this request, arguing that the clarification would undermine its right to release up to the total amount of capacity for which it had contracted.

The Commission agreed with the Arizona Directs, and clarified its prior order accordingly. It concluded that limits should be applied at each delivery point, not the aggregate of all delivery points. *Id.* at 61,677. The Commission found that this result was reasonable since it would help small shippers like the Arizona Directs with one or a few primary delivery points and would give such shippers more flexibility in releasing capacity. At the same time, the Commission found that this result would not interfere with the participation of full requirements customers in the capacity release program.

Southwest sought rehearing of the Commission's order, arguing, among other things, that the Commission improperly placed limitations on its ability to use delivery point capacity. In other words, it took issue with the Commission's insistence that full requirements customers must designate in advance of a capacity release what portion of their capacity rights they wished to retain at each primary delivery point. In addition, Southwest complained about individual capacity caps to be imposed on each of its delivery points in Arizona.

FERC largely rejected Southwest's arguments. It further explained that it was necessary to limit full requirements customers' rights at their receipt and delivery points so that a full requirements customer would not be able to "effectively tie up capacity on all delivery points despite being able to release capacity" and thereby gain an unfair competitive advantage over the other customers competing in the capacity release market. *El Paso Natural Gas Co.*, 66 F.E.R.C. ¶ 61,183 at 61,381 (1994). By adopting the Arizona Directs' proposal—requiring full requirements customers to announce in advance of a capacity release what portion of their capacity rights they wished to retain at each primary delivery point—FERC ensured that other shippers would learn what delivery point capacity was available for their use.

Although the Commission denied Southwest's petition for rehearing, it stated that it would review El Paso's capacity release program after one year to determine if the administrative difficulties Southwest had predicted had actually occurred. *Id.* at 61,380. It is in this posture that we consider Southwest's consolidated petitions for review.

## II. ANALYSIS

At the outset, we note that we need not discuss Southwest's petition in No. 92–1623 at length. That petition, which challenged the Commission's failure to require El Paso to provide "no notice" service, has been rendered moot by FERC's later decision requiring such service. *See* Order No. 636–C, 78 F.E.R.C. ¶ 61,186 at 61,771–72. Southwest tacitly admits this mootness. Petitioner's brief at 6 & n.4. None of petitioner's other issues need detain us much longer.

### A. *Southwest's Claimed Historic Rights to Firm Capacity*

■ In a rather muddled manner, Southwest describes one of the issues presented for review:

Where the law requires natural gas pipelines to provide unbundled firm transportation service that is equal in quality to the bundled firm gas service formerly provided, may a pipeline offer a local distribution company capacity rights at delivery points that are inferior to that LDC's capacity rights prior to unbundling, and inferior to the capacity rights of subsequent purchasers of firm capacity?

Petitioner's brief at 1. What Southwest really seems to be seeking is what it calls "first-in-time delivery point capacity allocation." In other words, Southwest contends that because it had delivery rights before Expansion Shippers were added to the customer mix on El Paso's line, it should have a priority right to capacity over the Expansion Shippers. FERC dismissed that claim, stating:

The parties expressed concerns regarding historical primary delivery points and flexible/alternate delivery points. This issue seems more properly to be one of the allocation of delivery point capacity which

must, therefore, be addressed by El Paso in El Paso's restructuring proceedings.... *Southwest Gas Corp. v. El Paso Natural Gas Co.*, 61 F.E.R.C. ¶ 61,368 at 62,464 (1992). In the restructuring proceeding, the Commission granted some of the relief that Southwest sought by reserving to Southwest and the Expansion Shippers priority rights at fully booked delivery points, but did not grant Southwest's claim to "vested" or "historical" rights as against the Expansion Shippers. *El Paso Natural Gas Co.,* 64 F.E.R.C. ¶ 61,265 at 62,827 (1993). The Commission contends that this ruling, addressing the priority rights as against all parties except the Expansion Shippers, disposed of all allocation claims left open by its original order, and that all other issues raised were not properly before it, having been disposed of in prior orders. Southwest contends that the Commission erred by failing to address its other arguments relating to delivery point capacity. We agree with the Commission.

■ Insofar as Southwest's rather confused and confusing argument questions the Commission's interpretation of the breadth of its own prior order, "it is well established that an agency's interpretation of the intended effect of its own orders is controlling unless clearly erroneous." *Transcontinental Gas Pipe Line Corp. v. FERC,* 922 F.2d 865, 871 (D.C.Cir.1991) (citation omitted). Southwest has done nothing to convince us that the Commission's interpretation of its own prior order is clearly erroneous. Insofar as the petition rehashes the issue previously litigated—that is, the Commission's permitting El Paso to book, and in Southwest's view to overbook, capacity at the two Topock delivery points utilized by Southwest—we already ruled in *Southwest Gas Corp.* that Southwest has not demonstrated that the Commission's decision injured it in fact and thus made it an aggrieved party for purposes of standing before this court. 40 F.3d at 467–68. The present petition adds nothing new, nor does it change our view. Finally, insofar as it is necessary to address the substantive question of "historic" or "vested" rights claimed by Southwest, the Commission not only reasonably but correctly points out that Southwest had no such rights, because the flexibility available under El Paso's proposal did not exist before Order No. 636 restructuring. 64 F.E.R.C. at 62,827. The Commission further reasonably concluded that anything lost by Southwest was at least "counterbalanced" by "other more expansive rights" that Southwest gained under restructuring. *Id.* at 62,828.

### B. FERC's Refusal to Allow Southwest to Use California Interconnection Points as Receipt Points

■ Southwest contends that it was arbitrary and capricious for the Commission to deny it the use of California interconnection points with El Paso's pipelines as receipt points. Those points were already available to Southwest as delivery points. Had FERC approved Southwest's application, petitioner would have been permitted to deliver gas to its system in southern Nevada by "backhaul," which involves the displacement of gas but not physical reversal of a forwardhaul flow of gas. However, FERC rejected the request, concluding that petitioner could use the California Topock delivery points as receipt points only if it paid an additional zonal delivery charge for the displacement service. 64 F.E.R.C. at ¶ 62,830. Southwest contends that FERC's decision denying the use of less costly displacement service to an existing firm customer without payment of higher forwardhaul charges is unreasoned, and therefore arbitrary and capricious. FERC replies that this ruling is a rather straightforward application of the Order No. 636 requirement that the flexibility given firm shippers to choose among specific locations on the transporting pipeline is limited to receipt and delivery points "within the path" of the shipper's firm service. *See* Order No. 636–A at 30,582.

■ We agree with FERC. The Commission need not revisit the reasoning of a general order every time it applies it to a specific circumstance. This part of Southwest's petition is no more than an impermissible collateral attack on Order No. 636. *Cf. Transwestern Pipeline Co. v. FERC,* 988 F.2d 169, 174 (D.C.Cir.1993) (denying challenge to a specific application of a general order).

### C. FERC's Requirement of Capacity Release Specification

 The Commission imposed two conditions on the participation of full requirements customers, such as Southwest, in El Paso's capacity release program. First, it required those customers to limit their capacity releases to a defined level. Second, it required them to designate the amount of capacity they plan to release at each specific delivery point. Southwest attacks these limitations as arbitrary and capricious. The Commission defends them as reasonable measures designed to balance the interests of full requirements and contract demand customers. The Commission's opinion in the administrative proceeding offers a succinct defense of its decision:

> Assuming that Southwest would otherwise have to designate [contract demands] for its other delivery points that are less than the physical capacity of each point, Southwest could nonetheless tie up 100 percent of the capacity at each point if it retains its full requirements rights at each point. There would be no way for other shippers to acquire any primary rights at any of those points because of Southwest's full requirements rights. It merely would not be able to demand more than its total billing determinant level from all of its delivery points in the aggregate.

*El Paso Natural Gas Co.*, 66 F.E.R.C. ¶ 61,-183 at 61,381 n. 9 (1994). We find this explanation, taken together with the rest of the Commission opinion, more than adequate to meet the familiar arbitrary and capricious standard of administrative procedure review. *See* 5 U.S.C. § 706(2). We therefore conclude that we must deny Southwest's petition.

### III. CONCLUSION

For the reasons set forth above, we find that none of the petitions offered by Southwest entitles it to the relief sought. Although we have not addressed each of the arguments raised by Southwest, we have carefully considered them all and determined that none warrants reversal of the Commis-sion's decisions. Therefore, the petitions for review are denied.