Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued March 14, 2003        Decided April 29, 2003

No. 02-1141

INTERMOUNTAIN MUNICIPAL GAS AGENCY,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

QUESTAR GAS COMPANY,
INTERVENOR

————

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

————

*J. Craig Smith* argued the cause for the petitioner. *Scott M. Ellsworth* and *Charles F. Wheatley, Jr.* were on brief.

*Lona T. Perry*, Attorney, Federal Energy Regulatory Commission, argued the cause for the respondent. *Cynthia*

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*A. Marlette*, General Counsel, and *Dennis Lane*, Solicitor, Federal Energy Regulatory Commission were on brief. *Larry D. Gasteiger*, Attorney, Federal Energy Regulatory Commission, entered an appearance.

*David S. Andersen* and *C. Scott Brown* were on brief for the intervenor.

Before: SENTELLE, HENDERSON and TATEL, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Petitioner Intermountain Municipal Gas Agency (Intermountain) is an association of southern Utah and northern Arizona municipalities. Intervenor Questar Gas Company (Questar), formerly Mountain Fuel Supply Company (Mountain Fuel), operates a pipeline that delivers natural gas to customers in southern Utah, including members of Intermountain. In response to a joint petition by Intermountain and Questar, the Federal Energy Regulatory Commission (FERC or Commission) issued an order declaring that Questar's pipeline will lose its exemption from FERC regulation under the Hinshaw Amendment to the Natural Gas Act (NGA), 5 U.S.C. § 717(c), if Intermountain transports gas received from Questar in Utah across the state line into Arizona—either for delivery to one or more member municipalities in northern Arizona or for transportation through Arizona and back across the state line to a municipality in southern Utah. *Intermountain Mun. Gas Agency*, No. CP01–376–000 at 11 (Dec. 21, 2001) (Decl. Ord.). Intermountain filed a petition for rehearing which the Commission denied. *Intermountain Mun. Gas Agency*, No. CP01–376–001 (Feb. 28, 2002) (Reh'g Ord.). Intermountain has petitioned the court for review of the Commission's orders. As we explain *infra*, Intermountain has preserved but a single ground for consideration in this court—that Intermountain's members' status as municipalities exempts them and Intermountain from FERC jurisdiction over the proposed distribution—and we conclude this ground does not warrant granting review.

**I.**

FERC's regulatory jurisdiction under the Natural Gas Act, 15 U.S.C. § 717 *et seq.*, generally extends "to the transportation of natural gas in interstate commerce, to the sale in interstate commerce of natural gas for resale for ultimate public consumption for domestic, commercial, industrial, or any other use, and to natural-gas companies engaged in such transportation or sale." 15 U.S.C. § 717(b). In 1954 the Congress enacted the Hinshaw Amendment, which "carves out an exception to FERC jurisdiction for natural and legal persons engaged in the transportation of 'natural gas received by such person from another person within or at the boundary of a State if all the natural gas so received is ultimately consumed within such State.'" *Pub. Utilities Comm'n of Cal. v. FERC*, 143 F.3d 610, 614 (D.C. Cir. 1998) (quoting 15 U.S.C. § 717(c)).[1]

Intermountain was formed for the purpose of securing natural gas delivery for its member municipalities from Questar's predecessor Mountain Fuel, which provided Hinshaw-

---

[1] The amendment provides in full:

The provisions of this chapter shall not apply to any person engaged in or legally authorized to engage in the transportation in interstate commerce or the sale in interstate commerce for resale, of natural gas received by such person from another person within or at the boundary of a State if all the natural gas so received is ultimately consumed within such State, or to any facilities used by such person for such transportation or sale, provided that the rates and service of such person and facilities be subject to regulation by a State commission. The matters exempted from the provisions of this chapter by this subsection are declared to be matters primarily of local concern and subject to regulation by the several States. A certification from such State commission to the Federal Power Commission that such State commission has regulatory jurisdiction over rates and service of such person and facilities and is exercising such jurisdiction shall constitute conclusive evidence of such regulatory power or jurisdiction.

15 U.S.C. § 717(c).

exempt distribution to various Utah municipalities through its southern pipeline.[2] On July 21, 1995 Intermountain petitioned FERC for a declaratory order determining whether FERC would acquire jurisdiction over Mountain Fuel's southern pipeline if the pipeline distributed natural gas to Intermountain's members. On March 4, 1996 FERC issued an order declaring that Mountain Fuel could retain its Hinshaw exemption from FERC jurisdiction for the proposed service to Intermountain's Utah members but that Mountain Fuel would require an NGA certificate from FERC to provide service to the Arizona members. *Intermountain Mun. Gas Ass'n*, 74 F.E.R.C. 61,254 (1996). Mountain Fuel subsequently began providing service to Intermountain's Utah members, its Hinshaw exemption intact.

Intermountain remained eager to secure distribution to its unserved members, while Mountain Fuel adamantly declined to provide service that would subject it to FERC jurisdiction. On May 25, 2001 Intermountain filed a joint petition, with Questar, seeking a declaration from FERC of the regulatory consequences of seven possible pipeline operations. Two of the scenarios are relevant here. The petition asked if Questar would lose its Hinshaw exemption, first, if it delivered gas to Hildale, Utah for transportation by a municipally owned pipeline across the border into Arizona and back into Utah for use in Kanab, Utah and, second, if it delivered gas to Hildale either for immediate distribution to and consumption in adjoining Colorado City, Arizona[3] or for delivery to another municipal pipeline that would transport the gas to Colorado City and thence southeast to Fredonia, Arizona and finally

---

[2] Mountain Fuel also operated a non-Hinshaw northern pipeline serving northern Utah and southern Idaho.

[3] Colorado City had previously sought a declaration from FERC that the city could file a request pursuant to Section 7(a) of the NGA, 15 U.S.C. § 7117f(a), for an order requiring Questar to transport interstate natural gas to Colorado City. In a decision issued January 15, 1999 FERC denied the petition on the ground that the Hinshaw Amendment precluded its exercising jurisdiction over Questar. *Town of Colo. City, Ariz.*, 86 F.E.R.C. 61,043 (1999).

four miles north to Kanab, Utah, for consumption in each of the three cities.

On December 21, 2001 FERC issued an order declaring that under either of the two scenarios Questar would lose its Hinshaw exemption and would require a "blanket certificate" from FERC under 18 C.F.R. § 284.224 to operate the pipeline.[4] Preliminarily, FERC determined that, although municipalities are generally exempt from NGA regulation, the municipal status of Intermountain's members' did not foreclose jurisdiction in this instance because a municipality is authorized to act as a municipality only within its state of incorporation. FERC concluded that, if a municipality operates outside the state, it is subject to federal regulation by FERC like any other entity. Otherwise, FERC noted, municipalities would be able to avoid regulation of all manner of interstate activity. FERC then examined the various scenarios presented.

On the first proposal—to transport gas from Hildale, Utah through northern Arizona to Kanab, Utah—FERC declared: "Once the gas has been received by the pipeline within the state, it is our interpretation of the statute that [the] tests for exemption are not met if, instead of being consumed in the state, the gas is once again transported beyond the state border—even if it is later transported back into the state for consumption." Decl. Ord at 11. In FERC's view, "it is inconsistent with the spirit and plain meaning of the exemption if gas is transported beyond the regulatory control of the state before being consumed." *Id.* at 11. FERC rejected the second scenario—transportation of the gas delivered in Utah to the Arizona cities—"[f]or the same reasons set out in response to the first scenario," namely, because the pipeline

---

[4] Section 284.224 provides for a "blanket certificate" permitting a "local distribution company" or "Hinshaw pipeline" "to engage in the sale or transportation of natural gas that is subject to the Commission's jurisdiction under the Natural Gas Act, to the same extent that and in the same manner that intrastate pipelines are authorized to engage in such activities." 18 C.F.R. § 284.224(b).

"will cross the state line after it receives gas from Questar's Hinshaw facility." Decl. Ord. at12.

On January 22, 2002 Interstate petitioned for rehearing, arguing that municipalities are exempt from regulation under the NGA and that FERC therefore lacks jurisdiction over the proposed delivery of natural gas to Intermountain's member municipalities. FERC denied the petition in an order issued February 28, 2002, iterating its jurisdiction over Intermountain's interstate service and concluding, in any event, that "Intermountain's jurisdictional status has no bearing on how the ultimate consumption requirement affects Questar's status as a Hinshaw pipeline for the purposed [sic] of NGA section 1(c)." Reh'g Ord. at 8.

## II.

Intermountain offers three arguments to support reading the National Gas Act to permit Questar to retain its Hinshaw exemption if it delivers natural gas to Intermountain that Intermountain then either transports by pipeline through northern Arizona to Kanab, Utah or distributes directly from Hildale, Utah to Colorado City, Arizona. "Our analysis of the Commission's interpretation of the Natural Gas Act is controlled by *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)." *Nat'l Fuel Gas Supply Corp. v. FERC*, 899 F.2d 1244, 1247 (D.C. Cir. 1990). *Chevron* directs:

> If … " 'Congress has directly spoken to the precise question at issue,' " we "must give effect to Congress's 'unambiguously expressed intent.' " *Secretary of Labor v. [Fed. Mine Safety & Health Review Comm'n]*, 111 F.3d 913, 917 (D.C. Cir. 1997) (quoting *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984)). "If 'the statute is silent or ambiguous with respect to the specific issue,' we ask whether the agency's position rests on a 'permissible construction of the

statute.' " *Id.* (quoting *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782, 81 L.Ed.2d 694).

*Beverly Health & Rehab. Servs., Inc. v. NLRB*, 317 F.3d 316, 321 (D.C. Cir. 2003) (quotations omitted). With these principles in mind, we discuss each of Intermountain's arguments in turn.

First, Intermountain challenges FERC's interpretation of the Hinshaw Amendment to preclude exempting a system which delivers gas that is subsequently transported temporarily out of state but returned for ultimate consumption within the state of delivery—as in Intermountain's Kanab proposal. We conclude that the court lacks jurisdiction to address this contention because Intermountain did not raise it in the petition for rehearing before FERC. NGA section 19(b) flatly states: "No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do." 15 U.S.C. § 717r(b). Intermountain contends it sufficiently raised its objection on rehearing when it "argued that 'by providing gas to [Intermountain] for transportation to its constituents, Questar will not be violating the Hinshaw exemption.' " Reply Br. at 13 (quoting Intermountain's Req. for Reh'g at 7 (filed Jan. 22, 2002)). But so general and vague a statement—which could apply to any of the Hinshaw scenarios raised in Intermountain's initial brief before the agency—does not satisfy section 19(b) which requires that "[a]n 'objection' must be 'specifically urge[d],' " *Louisiana Intrastate Gas Corp. v. FERC,* 962 F.2d 37, 41 (D.C. Cir. 1992) (quoting *Office of the Consumers' Counsel v. FERC*, 914 F.2d 290, 295 (D.C. Cir. 1990)), so as "to 'put the Commission on notice of the ground on which rehearing was being sought,' " *id.* at 41–42 (quoting *City of Farmington v. FERC,* 820 F.2d 1308, 1311 n.1 (D.C. Cir. 1987)).[5] Inter-

---

[5] At oral argument Intermountain also cited the first page of its rehearing request which recites that Intermountain "contemplates receipt of interstate gas supplies, transported by interstate pipelines to Questar's Utah system to Hildale's municipal pipeline, thence by IMGA to municipalities within Utah, Hildale and Kanab, as well as to two municipalities just within the Arizona border,

mountain's failure to specifically urge its Kanab argument in the rehearing petition is doubtless the reason FERC did not address the issue in its rehearing denial. *Cf. id.* at 41–42 (that petitioner adequately raised argument in rehearing petition was "evidenced by the fact that FERC responded on the merits").[6]

Second, Intermountain contends that the proposed direct distribution of gas by Hildale to Colorado City is exempt from the NGA because it is "local distribution," which is expressly exempted from regulation by NGA § 1(b). Because Intermountain failed to raise this argument in its rehearing petition, we are foreclosed from considering it as well.[7]

––––––––––

Colorado City and Fredonia." Req. for Reh'g at 1. This isolated reference to Kanab in the factual recitation cannot be characterized as an "objection" to FERC's declaratory order.

[6] We do not mean to suggest Intermountain would necessarily prevail on the Kanab challenge were it properly preserved. Assuming the Hinshaw Amendment is "silent," as Intermountain proposed at oral argument, on the question whether it exempts gas that is transported outside the delivery state for ultimate consumption within the delivery state, FERC's denial of the exemption might well be reasonable under *Chevron* in light of the NGA's underlying policy of subjecting interstate transportation to FERC regulation, *see* 15 U.S.C. § 717(b), and the narrow intent of the Hinshaw Amendment "to exempt . . . persons from FERC regulation only for the purposes of their involvement in intrastate gas transport, not for the purposes of their involvement in interstate or other regulated activities," *Pub. Utilities Comm'n of Cal.*, 143 F.3d at 615; *see also General Motors Corp. v. Tracy*, 519 U.S. 278, 284 n.3 (1997) ("[T]he Hinshaw Amendment to the NGA, 5 U.S.C. § 717(c), exempts from FERC regulation intrastate pipelines that operate exclusively in one State and with rates and service regulated by the State.") (citing *ANR Pipeline Co. v. FERC*, 71 F.3d 897, 898 n.2 (D.C. Cir. 1995)). "A Hinshaw pipeline can unquestionably come under FERC authority when it engages in activities that go beyond the intrastate transport of gas." *Pub. Utilities Comm'n of Cal.*, 143 F.3d at 615.

[7] Intermountain contends it "adequately raised its objection . . . when in its *Petition for Rehearing*, [it] stated that the transportation 'proposed by [Intermountain] is of primary local concern,

Third, Intermountain asserts that, because municipalities are specifically excluded from the NGA's definition of "person,"[8] they are exempt from FERC jurisdiction and FERC is therefore powerless to regulate the proposed transportation or distribution of natural gas by the member municipalities. Whether or not FERC may regulate municipalities, however, it has indisputable authority to regulate Questar if its Hinshaw exemption is lost.[9] That FERC's potential exercise of jurisdiction over Questar may affect Intermountain's member

---

focusing as it does entirely on municipal conveyance in an area isolated from all other such service . . . . There will be no effect on interstate commerce, since there is no other source of natural gas with which [Intermountain] will be competing.'" Reply Br. at 14 (quoting Req. for Reh'g at 10). We disagree. Intermountain's rehearing request did not even cite the statute or use the statutory phrase ("local distribution," 15 U.S.C. § 717(b)) on which it now relies. FERC understandably missed this camouflaged argument.

In any event, Intermountain's second argument is no more compelling than its first. *See supra* note 6. It is true that section 1(b) expressly exempts from regulation "the local distribution of natural gas" but at the same time it also expressly confers jurisdiction over "the transportation of natural gas in interstate commerce," which is precisely what the proposed distribution to Colorado City would be. *See Federal Power Comm'n v. Panhandle Eastern Pipe Line Co.*, 337 U.S. 498, 503–04 (1949); *see also United Distribution Cos. v. FERC*, 88 F.3d 1105, 1154 (D.C. Cir. 1996) (NGA § 1(b) "local distribution" proviso "does not withdraw from FERC's jurisdiction any aspect of the interstate transportation of natural gas").

[8] The NGA defines "person" to "include[ ] an individual or a corporation" but expressly excludes "municipalities" from its definition of "corporation" and defines "municipality" to "mean[ ] a city, county, or other political subdivision or agency of a State." 15 U.S.C. § 717a(1)-(3).

[9] We express no opinion on whether FERC may regulate the interstate transportation of natural gas by a municipality. *See United Distribution Cos. v. FERC*, 88 F.3d at 1153 & n.63 (noting FERC had "twice rejected the suggestion that it should invoke its transportation jurisdiction over municipalities" but cautioning that court's "opinion should not be read to either approve or disapprove the Commission's reading of the Natural Gas Act").

municipalities does not defeat the agency's jurisdiction. *Cf. N.Y. State Elec. & Gas Corp. v. FERC*, 638 F.2d 388, 393–96 (2d Cir. 1980) (upholding FERC jurisdiction under Federal Power Act to modify contract between utility company and state agency, despite exemption of states and their subdivisions from act's provisions, where modification "d[id] not require [state agency] to take or to refrain from taking action" or "place any limitations on [its] powers or prerogatives").

For the foregoing reasons, the petition for review is

*Denied.*