# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 14, 2017    Decided April 24, 2018

No. 16-1244

CITY OF CLARKSVILLE, TENNESSEE,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

TODD COUNTY, KENTUCKY,
INTERVENOR

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

*Jeffrey K. Janicke* argued the cause for petitioner. With him on the briefs were *James R. Choukas-Bradley* and *Joshua L. Menter*.

*John P. Gregg* and *Randolph Elliott* were on the brief for *amicus curiae* American Public Gas Association and American Public Power Association in support of petitioner. *Delia D. Patterson* entered an appearance.

*Beth G. Pacella*, Deputy Solicitor, Federal Energy Regulatory Commission, argued the cause for respondent. On

the brief were *Robert H. Solomon*, Solicitor, and *Ross R. Fulton*, Attorney.

*Jennifer N. Waters* was on the brief for intervenor Todd County, Kentucky in support of respondent.

Before: GRIFFITH and WILKINS, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

WILKINS, *Circuit Judge:* We consider a Petition for Review challenging the Federal Energy Regulatory Commission's assertion of Natural Gas Act jurisdiction over the transportation and sale of natural gas for resale from the City of Clarksville, Tennessee to the City of Guthrie, Kentucky. *See* Order Granting Service Area Determinations, *City of Clarksville, Tennessee*, 146 FERC ¶ 61,074 (2014); Order Denying Reh'g, *City of Clarksville, Tennessee*, 155 FERC ¶ 61,184 (2016). Clarksville challenges the Commission's exercise of jurisdiction as contrary to the plain language of the Natural Gas Act ("NGA"), 15 U.S.C. §§ 717-717z, and contrary to longstanding FERC precedent.

For the reasons explained below, we grant the Petition for Review and vacate FERC's Order Granting Service Area Determinations and Order Denying Rehearing to the extent they are inconsistent with this opinion.

**I.**

Congress enacted the Natural Gas Act, ch. 556, 52 Stat. 821 (1938) (codified as amended at 15 U.S.C. §§ 717-717z), with the principal aim of "encourag[ing] the orderly development of plentiful supplies of . . . natural gas at

reasonable prices," *NAACP v. Fed. Power Comm'n*, 425 U.S. 662, 669-70 (1976), and "protect[ing] consumers against exploitation at the hands of natural gas companies," *Fed. Power Comm'n v. Hope Nat. Gas Co.*, 320 U.S. 591, 610 (1944). Along with those main objectives, there are also several "'subsidiary purposes'. . . includ[ing] 'conservation, environmental, and antitrust' issues." *Pub. Utils. Comm'n of Cal. v. FERC*, 900 F.2d 269, 281 (D.C. Cir. 1990) (quoting *NAACP*, 425 U.S. at 670 & n.6).

The Act vests FERC with broad authority to regulate the transportation and sale of natural gas in interstate commerce. 15 U.S.C. § 717c; *see also Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 300 (1988) ("The NGA long has been recognized as a comprehensive scheme of federal regulation of all wholesales of natural gas in interstate commerce." (citations and internal quotation marks omitted)). To achieve this objective, Congress equipped the Commission with a variety of regulatory tools, one of which captures the focus of this Court's review.

Under Section 7(c) of the Act, a natural gas company must obtain a certificate of public convenience and necessity from FERC prior to "undertak[ing] the construction or extension" of any natural gas facility for the transportation of natural gas in interstate commerce. 15 U.S.C. § 717f(c)(1)(A). The Act defines a "natural-gas company" as a "person engaged in the transportation of natural gas in interstate commerce, or the sale in interstate commerce of such gas for resale." *Id.* § 717a(6). A "person" "includes an individual or corporation." *Id.* § 717a(1). The Act specifies that a corporation "shall not include municipalities," which are defined as "cit[ies], count[ies], or other political subdivision[s] or agenc[ies] of a State." *Id.* § 717a(2)-(3).

Section 7(f)(1) permits FERC to make a service area determination, by which it can authorize an entity primarily engaged in the local sale or distribution of natural gas but subject to the Commission's jurisdiction because its facilities cross state lines, to construct, enlarge, or extend its facilities to meet market demand without prior FERC approval. 15 U.S.C. §717f(f)(1); *Intermountain Mun. Gas Agency & Questar Gas Co.*, 97 FERC ¶ 61,359, ¶ 62,660 (2001); *Ken-Gas of Tenn., Inc.*, 45 FERC ¶ 61,110, ¶ 61,346 (1988).

FERC regulations issued pursuant to Section 7 provide for the automatic issuance of any necessary certificate authority for a non-interstate pipeline to make sales for resale in interstate commerce without being subject to other NGA filing or reporting regulations. 18 C.F.R. § 284.402. A separate regulation allows the Commission to issue a blanket certificate permitting an otherwise local distribution entity to transport natural gas that is subject to FERC's jurisdiction under the NGA. *Id.* § 284.224; *see Intermountain Mun. Gas Agency v. FERC*, 326 F.3d 1281, 1283 n.4 (D.C. Cir. 2003).

## II.

The City of Clarksville, Tennessee ("Clarksville") is a municipality that operates natural gas facilities providing natural gas services to customers in both Tennessee and Kentucky. Clarksville owns and operates a natural gas distribution system that serves a "significant geographic area" in Montgomery County, as well as smaller, discrete areas in Cheatham and Robertson Counties, all in Tennessee. In addition, Clarksville operates distribution facilities that service the U.S. Army base at Fort Campbell – partly located in Kentucky – and provides gas service to 16 commercial customers through the "Kentucky Service Line" pipeline. The "Kentucky Service Line" pipeline extends from Clarksville's

municipal system in Montgomery County 2,400 feet into Christian County, Kentucky.

On June 26, 2013, Clarksville filed an application with FERC, requesting a Natural Gas Act Section 7(f) service area determination covering its services to Fort Campbell and the Kentucky Service Line. Clarksville also requested a waiver of reporting, accounting, and other regulatory requirements that are primarily applicable to FERC-jurisdictional natural gas companies. In an order issued February 7, 2014, FERC granted these requests.

During the proceeding, the Commission learned that Clarksville has a service agreement with the City of Guthrie, Kentucky ("Guthrie"). Under that contract, Clarksville transports natural gas to a meter and regulating station 20 feet south of the Tennessee/Kentucky border, where Guthrie receives the gas into a pipeline that crosses into Kentucky. Though Clarksville did not know for certain, it assumed that Guthrie sells the gas to retail customers in Kentucky. Having learned about the agreement between Clarksville and Guthrie, FERC stated – in a footnote in its order granting the requested service area determination – that the sales to Guthrie were covered under a blanket marketing certificate already granted by 18 C.F.R. § 284.402. FERC also declared that should Clarksville desire to transport natural gas in interstate commerce in the same manner as an intrastate pipeline may under section 311 of the Natural Gas Policy Act ("NGPA"), 15 U.S.C. § 3371, it would be required to obtain a different certificate under 18 C.F.R. § 284.224. 146 FERC ¶ 61,074, at 61,311 n.15.

Clarksville sought rehearing of FERC's determinations regarding its agreement with Guthrie, arguing that it did not require authorization under Section 7 of the NGA to transport

and sell gas to Guthrie for resale and consumption in Kentucky because Clarksville is a municipality as defined by the NGA. Relying on prior FERC orders, Clarksville argued that FERC lacked jurisdiction over these transactions because the NGA excludes municipalities from the ambit of FERC's jurisdiction. Although FERC acknowledged the precedent upon which Clarksville relied, FERC explained that it had "reconsider[ed]" this precedent. 155 FERC ¶ 61,184 at P. 11. Specifically, FERC explained that its prior "interpretation of the municipal exemption created by operation" of the NGA was "overly expansive, at least to the extent it would allow municipal gas utilities to avoid NGA jurisdiction over the transportation and sale of gas for consumption in *other states*, because such an interpretation would create a regulatory gap." *Id.* (emphasis in original). The Commission reasoned that this regulatory gap would contravene the purpose of the NGA, which was "intended to fill the regulatory gap left by a series of Supreme Court decisions that interpreted the dormant Commerce Clause to preclude state regulation of interstate transportation and of wholesale gas sales." *Id.* at P. 15 (citation omitted). FERC largely relied on its decision in *Intermountain Municipal Gas Agency*, 97 FERC ¶ 61,359 (2001), *reh'g denied*, 98 FERC ¶ 61,216 (2002), *aff'd*, 326 F.3d at 1286 (denying petition for review on separate grounds), where FERC found that it has jurisdiction over a municipally-owned pipeline that crosses state lines. 155 FERC ¶ 61,184 at P. 19.

In addition to finding that it has jurisdiction over Clarksville's sales and transportation of natural gas to Guthrie, FERC recognized "that Clarksville has been providing service for Guthrie for some time and that the current arrangement provides necessary gas supplies for Guthrie's local distribution system in Kentucky." *Id.* at P. 20. In light of that, FERC found that the "public convenience and necessity" required it to issue Clarksville a "case-specific certificate of limited jurisdiction to

authorize [Clarksville's] existing transportation service for Guthrie without affecting its otherwise non-jurisdictional activities and facilities." *Id.* Thus, Clarksville could continue to transact with Guthrie under the terms of the existing contract.

## III.

### A.

Before addressing the merits, we must first determine whether Clarksville has standing to challenge the orders at issue and whether the dispute is ripe for our review. For the reasons discussed below, we reject FERC's standing and ripeness challenges to our authority to hear the Petition for Review.

### i.

Any party to a proceeding under the Act who is "aggrieved" by a FERC order may petition for review of that order in this court, provided that they first seek rehearing before FERC. 15 U.S.C. § 717r(a)-(b). A party is aggrieved only if it can establish the constitutional requirements for standing. *PNGTS Shippers' Grp. v. FERC*, 592 F.3d 132, 136 (D.C. Cir. 2010) (citation omitted). To establish constitutional standing, a petitioner must establish that she has suffered an injury in fact that is fairly traceable to the challenged action of the defendant and "likely" to be redressed by a favorable judicial decision. *WildEarth Guardians v. Jewell*, 738 F.3d 298, 305 (D.C. Cir. 2013) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Clarksville plainly satisfies the first requirement that it seek rehearing before FERC. But the Commission contends

that Clarksville is not "aggrieved" because, notwithstanding the orders at issue, Clarksville can continue to transport and make sales for resale to Guthrie in the same manner as it could before the Commission's orders, and thus it has suffered no injury. Resp't's Br. 3. Clarksville disputes this portrayal of the facts and provides two grounds upon which it asserts it has standing. First, Clarksville explains that FERC's decision subjects it to the data retention and price reporting requirements set forth in 18 C.F.R. § 284.403. *See* Pet'r's Br. 14 & nn.39-40. Second, Clarksville states that FERC's exercise of jurisdiction in this situation has affected its business decisions regarding the provision of new services to other entities outside of Tennessee. *Id.* at 15; Pet'r's Reply 4; Hickey Affidavit, Pet'r's Br. add. B, at B-2-B-3.

Although FERC asserted in its brief that Clarksville would not be subject to the additional regulatory requirements found in 18 C.F.R. §284.403, *see* Resp't's Br. 16-17, at oral argument counsel for FERC conceded that its ruling did in fact subject Clarksville to a "minimal" data retention requirement. This imposition of new regulatory obligations, in and of itself, is sufficient to establish standing. *See Dominion Transmission, Inc. v. FERC*, 533 F.3d 845, 852 (D.C. Cir. 2008) (finding standing where FERC required the petitioner to meet new regulatory and reporting requirements, thereby changing existing obligations and requiring the disclosure of private operating data); *cf. State Nat'l Bank of Big Spring v. Lew*, 795 F.3d 48, 55 (D.C. Cir. 2015) (finding petitioner's claim too speculative without additional regulatory requirements).

The injury Clarksville alleges it has suffered is fairly traceable to FERC's actions and is likely to be redressed by a judicial decision in Clarksville's favor. Accordingly, we find that Clarksville has standing to challenge the orders at issue,

and we need not decide the effect of FERC's exercise of jurisdiction on Clarksville's business decisions.

## ii.

FERC's assertion that the controversy is not ripe for review fares no better. Ripeness involves an inquiry into the fitness of the issues for judicial review and the hardship to the parties of withholding that review. *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967). But a showing of hardship is ordinarily unnecessary where the agency "has suggested no institutional interests in postponing review . . . , and adjudication will not benefit from additional facts." *Pub. Serv. Elec. & Gas Co. v. FERC*, 485 F.3d 1164, 1168 (D.C. Cir. 2007).

Neither Clarksville nor FERC has suggested a need for further factual development. Moreover, FERC does not suggest that its interpretation of the NGA has not crystalized enough for this Court's review. *See Burlington N. R.R. Co. v. Surface Transp. Bd.*, 75 F.3d 685, 691 (D.C. Cir. 1996). Instead, the Commission repackages its standing argument, asserting that Clarksville does not face any hardship that requires judicial review at this time. Our discussion of standing dooms that contention.

## B.

Turning to the merits, we review the Commission's interpretation of the NGA under the familiar two-step framework of *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See S.C. Pub. Serv. Auth. v. FERC*, 762 F.3d 41, 54 (D.C. Cir. 2014) (per curiam). If the Court determines that "Congress has directly spoken to the precise question at issue," and "the intent of

Congress is clear, that is the end of the matter." *Chevron*, 467 U.S. at 842. If, however, "the statute is silent or ambiguous with respect to the specific issue," then the Court must determine "whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. "No matter how it is framed, the question a court faces when confronted with an agency's interpretation of a statute it administers is always, simply, whether the agency has stayed within the bounds of its statutory authority," *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013) (emphasis omitted), and the court will defer to the Commission's reasonable interpretation of statutory ambiguities concerning both the scope of its statutory authority and the application of that authority, *see id.* at 296-97.

In addressing a question of statutory interpretation, we begin with the text. *See, e.g.*, *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252 (2004). The dispute centers around Section 7(c) of the NGA, which, in relevant part, provides:

> No natural-gas company or person which will be a natural-gas company upon completion of any proposed construction or extension shall engage in the transportation or sale of natural gas, subject to the jurisdiction of the Commission . . . , unless there is in force with respect to such natural-gas company a certificate of public convenience and necessity issued by the Commission authorizing such acts or operations[.]

15 U.S.C. § 717f(c)(1)(A). Again, the NGA defines a "natural-gas company" as a "person" "engaged in the transportation or sale for resale of natural gas in interstate commerce." *Id.* § 717a(6). The Act defines a "person" to include an

"individual or corporation," *id.* § 717a(1), and specifies that a corporation "shall not include municipalities."  *Id.* § 717a(2).

Relying on the plain language and significant FERC precedent, Clarksville contends that as a municipality, it is exempt from regulation under NGA Section 7.  Pet'r's Br. 20-25, 27.  We agree.  The language of the statute with respect to the definition of a "natural-gas company" and a "person" is clear and unambiguous – a municipality is *not* a natural gas company or a person.  Given the plain meaning of the text, we hold that Section 7(c) of the NGA precludes FERC from regulating, through certificates of public convenience and necessity, natural gas sales by municipalities acting as municipalities.  *Cf. Intermountain*, 97 FERC ¶ 61,359, at 62,659-60 (municipality with pipeline crossing state line ceases to act as a municipality).  Indeed, FERC has held as much for over 50 years. *See, e.g.*, *Freebird Gas Storage, LLC*, 111 FERC ¶ 61,054, P. 5 (2005) ("The Commission has determined that District is a municipality under section 2(3) of the NGA and therefore is not subject to the Commission's jurisdiction."); *Somerset Gas Serv.*, 59 FERC ¶ 61,012 (1992) (disclaiming jurisdiction under the NGA and the Natural Gas Policy Act over a municipality's transportation service for an interstate pipeline); *Tenn. Gas Pipeline Co.*, 70 FERC ¶ 61,329, ¶ 62,013 (1995) ("[T]he NGA exempts municipalities as entities from our jurisdiction[.]"); *Tenn. Gas Pipeline Co.*, 69 FERC ¶ 61,239, ¶ 61,903 (1994) ("[S]ince a municipality is not an individual and cannot be a corporation under NGA section 2, it cannot be a person and thus cannot be a natural-gas company subject to the Commission's NGA jurisdiction."); *United Gas Pipe Line Co.*, 46 FERC ¶ 61,060 (1989) (holding that municipalities are "nonjurisdictional"); *Nw. Ala. Gas Dist.*, 42 FERC ¶ 61,371 (1988) (disclaiming NGA jurisdiction over an Alabama municipality's backhaul service for an interstate pipeline); *Tex. Gas Transmission Corp.*, 3 FERC ¶ 61,135,

¶ 61,405 (1978) ("Memphis is not required to obtain certificate authorization under the Natural Gas Act to acquire the subject facilities since Memphis is a municipality and Section 2 of the Act does not include municipalities within the definition of a 'person' within the meaning of the Act."); *Panhandle E. Pipe Line Co. v. City of Rolla, Kan.*, 26 FPC 736, 737 (1961) (dismissing for lack of jurisdiction an interstate pipeline's complaint against a municipality after finding that the "plain language" of the NGA "expressly" excludes municipalities from "the ambit of Commission jurisdiction"); Sales and Transportation by Interstate Pipelines and Distributors; Expansion of Categories of Activities Authorized Under Blanket Certification, 48 Fed. Reg. 34,875-01, at 34,886 (July 20, 1983) ("[M]unicipalities cannot be issued certificates under section 7(c) of the Natural Gas Act[.]").

Despite its longstanding precedent to contrary, FERC makes two arguments to support its present position, neither of which is persuasive. First, relying on *United States v. Public Utilities Commission of California* (*CPUC*), 345 U.S. 295 (1953), FERC contends that a municipality can be a jurisdictional "person" and, therefore, a "natural gas company" under the NGA. 155 FERC ¶ 61,184 at P. 13. In *CPUC*, the Supreme Court considered whether the Federal Power Commission ("FPC") had the authority to regulate wholesale sales of electricity from a company to a municipality in another state pursuant to Section 201 of the Federal Power Act ("FPA"), 16 U.S.C. § 824. Section 201(b)(1) states that the provisions of the FPA at issue – Part II of the FPA – "apply to the transmission of electric energy in interstate commerce and to the sale of electric energy at wholesale in interstate commerce," with some exclusions not relevant here. 16 U.S.C. § 824(b)(1). Section 201 further defines the "sale of electric energy at wholesale," as the sale of such energy to "any person for resale." *Id.* § 824(d). FPA Section 3(4) states that "person

means an individual or corporation," the latter of which is defined not to include a municipality. *Id.* § 796(3), (4).

Acknowledging this statutory language but concluding that the plain language would "bring about an end completely at variance with the purpose of the statute," the Court rejected the contention that FPC could not exercise authority over the sales in question. *CPUC*, 345 U.S. at 315-16. Specifically, the Court stated that the use of the definitions found in Section 3 "has no support in the statutory scheme as a whole," particularly because other sections of Part II of the FPA rely on the premise "that [ ] political subdivisions of the states can be aggrieved by the failure of a public utility selling power to them to satisfy the requirements of Part II." *Id.* at 312-13. In addition, the Court found no evidence of "conscious coordination" between Section 3 and Section 201, and thus, Congress could not have intended the definitions to be a "limitation on Commission jurisdiction." *Id.* at 313.

Because the NGA is modeled substantively after the FPA, they are interpreted similarly. *Tenn. Gas Pipeline Co. v. FERC*, 860 F.2d 446, 454 (D.C. Cir. 1988) ("The Supreme Court has held that the Natural Gas Act and the Federal Power Act are in all material respects substantially identical and constructions of one are authoritative for the other." (internal citations and quotation marks omitted)). FERC argues that the reasoning in *CPUC* is equally applicable here, where adopting Clarksville's position would result in a regulatory gap in contravention of Congress's purpose in enacting the NGA. *See United Distrib. Cos. v. FERC*, 88 F.3d 1105, 1122 (D.C. Cir. 1996) (per curiam); H.R. Rep. No. 75-709, at 2 (1937).

It is not entirely clear, however, that a regulatory gap would result if FERC could not exercise jurisdiction over Clarksville's sale of natural gas to Guthrie. At oral argument,

counsel for Clarksville challenged FERC's finding that the State could not regulate the transaction. Similarly, *amici* contend that a local governing body can regulate the transaction at issue. Brief for Am. Pub. Gas Ass'n & Am. Pub. Power Assoc. as Amici Curiae Supporting Pet'r 14. If Clarksville and *amici* are correct, there is no regulatory gap. *CPUC*, 345 U.S. at 311 ("[T]he limitations established on Commission jurisdiction [articulated in the NGA] were designed to coordinate precisely with those constitutionally imposed on the states."); *United Distribution Cos.*, 88 F.3d at 1122 ("The NGA was intended to fill the regulatory gap left by a series of Supreme Court decisions that interpreted the dormant Commerce Clause to preclude state regulation of interstate transportation and of wholesale gas sales."). We need not decide the issue, however, because even if there were a regulatory gap, it would not be of the sort Congress was worried about in enacting the NGA. *See Hope Nat. Gas Co.*, 320 U.S. at 610 ("The primary aim of [the NGA] was to protect consumers against exploitation at the hands of natural gas companies."); *Hearing on H.R. 4008 Before H. Comm. on Intrastate & Foreign Commerce*, 75th Cong. 66-68 (1937) (statement of Luke J. Scheer, National Secretary of the Cities Alliance) (discussing the difficulties faced by municipalities attempting to obtain access to natural gas pipelines); *Hearing on H.R. 11662 Before Subcomm. of H. Comm. on Interstate & Foreign Commerce*, 74th Cong. 16-17 (1936) (statement of Dozier A. DeVane, Solicitor, Fed. Power Comm'n) (explaining that the NGA was necessary to "correct the abusive practices" of natural gas companies that were "enjoying a monopolistic position"); *id.* at 12 (stating that 11 companies owned about 76 percent of the total mileage of all natural gas pipelines in the United States). Thus, the reasoning of *CPUC* is inapposite here.

Second, FERC asserts that even if it were to accept Clarksville's argument that a municipality could not be a natural gas company, Clarksville's interpretation of the NGA is excessively narrow because the NGA provides the Commission jurisdiction over three separate areas: (i) the transportation of natural gas in interstate commerce; (ii) the sale of natural gas in interstate commerce for resale; and (iii) natural gas companies engaged in such transportation or sale. 155 FERC ¶ 61,184 at P. 8 (citing 15 U.S.C. § 717(b)); *see also Fed. Power Comm'n v. E. Ohio Gas Co.*, 338 U.S. 464, 468 (1950) (Section 1(b) "made the Natural Gas Act applicable to three separate things," and each has "independent and equally important places in the Act"). Thus, because the transaction between Clarksville and Guthrie constitutes the transportation and sale for resale of natural gas in interstate commerce, FERC contends that Clarksville's identity as a municipality is essentially irrelevant where the gas is "dedicated to the interstate market." 155 FERC ¶ 61,184 at P. 14 (citing *Pub. Serv. Co. of N.C. v. FERC*, 587 F.2d 716 (5th Cir. 1979) and *California v. Southland Royalty Co.*, 436 U.S. 519 (1978)).

While FERC is correct that Section 1(b) provides for jurisdiction over those three separate areas, the articulation of the scope of FERC's jurisdiction does not mean that Congress gave FERC jurisdiction over everything within those three areas. Indeed, Section 1(b) is not power-conferring or jurisdiction-creating and should not be read to say that FERC has jurisdiction over anything and everything related to the transportation and sale for resale of natural gas in interstate commerce. None of the cases on which FERC relies stands for such a broad interpretation of FERC's authority. For example, in *Public Service Company of North Carolina, Inc. v. FERC*, the Fifth Circuit emphasized "the convergence of three factors – (1) interstate transmission by a natural gas company, (2) Commission certification, and (3) the state's acquiescence in

(1) and (2)" that subjected the state to FERC regulation.[1]  587 F.2d at 720.  Here, by contrast, although Clarksville acceded to FERC jurisdiction when it applied for a Section 7 service area determination for Fort Campbell and the Kentucky Service Line, it did so only because its pipeline crossed state lines.  *See generally Intermountain*, 97 FERC ¶ 61,359.  There is no similar acquiescence with respect to Clarksville's sales to Guthrie.  Moreover, unlike *Intermountain*, in which we affirmed FERC's determination that it could regulate a municipality where its facilities crossed state lines because "a municipality is authorized to act as a municipality only within its state of incorporation," 326 F.3d at 1284, Clarksville acts only within Tennessee, its state of incorporation, with respect to its sales to Guthrie.  *See* 146 FERC ¶ 61,074, at 61,310 (stating, without finding otherwise, Clarksville's representation that Guthrie owns and operates the pipeline that crosses the border).  Accordingly, FERC's alternative argument fails as well.

* * *

For the foregoing reasons, we see no reason to deviate from the clear and unambiguous language of the statute and therefore grant the Petition for Review and vacate FERC's Service Area Order and Rehearing Order to the extent they are inconsistent with this opinion.

---

[1] Similarly, the entity challenging FERC's jurisdiction in *California v. Southland Royalty Company* had acceded to FERC jurisdiction when it applied for and received a certificate of public convenience and necessity.  436 U.S. at 521-22.